# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| LAMONIA PATRICE HURRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CA 18-0417-MU |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lamonia Patrice Hurry brings this action, pursuant to 42 U.S.C. §§ 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and a period of disability under Title II of the Social Security Act ("the Act) and for Supplemental Security Income ("SSI"), based on disability, under Title XVI of the Act. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 24 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 25. Upon consideration of the administrative

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 5, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Saul is substituted for Nancy Berryhill as the proper defendant in this case.

record, Hurry's brief, and the Commissioner's brief,[2] it is determined that the Commissioner's decision denying benefits should be affirmed.[3]

## I. PROCEDURAL HISTORY

Hurry applied for DIB, under Title II of the Act, 42 U.S.C. §§ 423 - 425, on or about March 5, 2014, and for SSI, based on disability, under Title XVI of the Act, 42 U.S.C. §§ 1381-1383d, on or about March 17, 2014, alleging disability beginning on August 28, 2012. (Tr. 335-41; 347-52). Her application for DIB was denied at the initial level of administrative review on June 25, 2014, and her application for SSI was denied at the initial level of administrative review on July 22, 2014. (Tr. 96-114). On August 6, 2014, Hurry requested a hearing by an Administrative Law Judge (ALJ). (Tr. 132-33). After hearings were held on October 2, 2015, May 9, 2016, and June 29, 2017, the ALJ issued an unfavorable decision finding that Hurry was not under a disability from August 28, 2012 through the date of the decision, November 21, 2017. (Tr. 10-18). Hurry appealed the ALJ's decision to the Appeals Council, and, on August 4, 2018, the Appeals Council denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5).

After exhausting her administrative remedies, Hurry sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g). (Doc. 1). The Commissioner filed an answer and the social security transcript on December 28, 2018. (Docs. 12, 13). Both parties

---

[2] The parties waived oral argument in this case. (Docs. 23, 26).
[3] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 24. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

filed briefs setting forth their respective positions. (Docs. 20, 21). Oral argument was waived. (Doc. 23). The case is now ripe for decision.

## II.  CLAIMS ON APPEAL

Hurry alleges that the ALJ's decision to deny her benefits is in error for the following reasons:

1.  The ALJ's residual functional capacity (RFC) assessment is not supported by substantial evidence;

2.  The ALJ failed to ask the Vocational Expert (VE) a complete and sufficient hypothetical question that included all of Hurry's limitations; and

3. The ALJ erred in not including a statement of Hurry's pain and its functional effects and, the ALJ's statement of Hurry's credibility did not comply with the requirements of SSR 96-7p.

(Doc. 20 at p. 2).

## III. BACKGROUND FACTS

Hurry was born on August 22, 1973 and was 40 years old at the time she filed her claim for benefits. (Tr. 80, 335). Hurry initially alleged disability due to a back problem, shoulder problem, hand/wrist problem, and high blood pressure. (Tr. 338). She received her GED. (Tr. 80). She has worked as an inspector at Medi Craft, as an assembler/boxer at Honda, at a Jack's restaurant, and as a babysitter. (Tr. 58, 81). In her Function Report, Hurry stated that her daily activities consist of personal care, preparing quick meals, taking her medication, a weekly load of laundry, checking the mail, reading, listening to music, watching television, talking with her family, and rotating between standing and sitting. (Tr. 396, 398, 400). She testified at the first hearing that

she grocery shops once a month with the assistance of her son, can do the dishes but "continuously" drops them, can dust, and can wash and fold laundry. (Tr. 81, 84-86, 398). She stated that she has a driver's license but does not drive anymore. (Tr. 80-81). She stated that she goes to church, but not every Sunday. (Tr. 84). She is able to pay bills, count change, handle a savings account, and use a checkbook. (Tr. 399).

## IV. ALJ'S DECISION

After conducting three hearings, the ALJ made a determination that Hurry had not been under a disability during the relevant time period, and thus, was not entitled to benefits. (Tr. 10-18). The findings set forth by the ALJ in his November 21, 2017 decision that are relevant to the claims on appeal are set forth herein.

## V. DISCUSSION

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm

5

"[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

As set forth above, Hurry has asserted three grounds in support of her argument that the Commissioner's decision to deny her benefits is in error. The Court will address Hurry's contentions in the order presented.

A. **Whether the ALJ's RFC assessment is supported by substantial evidence**

As set forth above, Hurry has asserted that the Commissioner's decision to deny her benefits is in error because the ALJ's Residual Functional Capacity (RFC) determination was not supported by substantial evidence. (Doc. 20 at pp. 2-7). Hurry argues that the RFC delineated by the ALJ is not supported by substantial evidence because "it fails to account for the limitations associated with **both** carpal tunnel syndrome ***and*** peripheral neuropathy, which were addressed in Dr. Freij's RFC assessment." (*Id*. at p. 3 (emphasis in original)). Specifically, Hurry's contention seems to center on the ALJ's assignment of more weight to the opinion of Dr. Todorov, a non-examining medical expert, than to the opinion of Dr. Freij, a neurologist who examined her on two occasions, with regard to the limitations accorded with respect to the left wrist/hand. Conversely, the Commissioner contends that Hurry's assertions of error are without merit because Dr. Freij's own records do not support a finding of limitations with regard to the left wrist/hand as restrictive as those set forth in the Medical Source Statement (MSS) he completed and because it is not error for the ALJ to assign more weight to the opinion of a non-examining physician when substantial evidence supports that decision. (Doc. 21 at pp. 3-5).

After reviewing and weighing the medical evidence, the Function Report completed by Hurry, and the other evidence of record and conducting three hearings, the ALJ found that Hurry had severe impairments of "carpal tunnel syndrome; peripheral neuropathy; shoulder bursitis with pain; obesity; and mild degenerative changes in the spine with mild kyphoscoliosis" but did not have an impairment or combination of impairments that met or equaled one of the listed impairments. (Tr. 13-14). The ALJ then found Hurry to have the RFC to perform light work, with certain limitations, set forth as follows:

> **she can sit five hours, stand two hours, and walk one hour without interruption. She can sit seven hours, stand three hours, and walk three hours in total for a workday. She should be allowed to use a cane when ambulating. She can frequently, but not constantly, reach overhead with the right upper extremity and frequently operate foot controls. Although the claimant can continuously manipulate with the right upper extremity, she should not be required to perform the same repetitive action with the right hand throughout a workday (i.e., no performing the same right hand task repeatedly). She must not work around unprotected heights. She can occasionally climb stairs and ramps, but not ladders or scaffolds. She can frequently stoop and occasionally kneel but not crouch or crawl.**

(Tr. 14). At steps four and five, the ALJ found that Hurry was unable to perform any past relevant work, but that there were a significant number of other jobs in the national economy that she could perform considering her age, education, work experience, and RFC. (Tr. 17-18).

A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. It is an "administrative assessment of the

extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. It represents **the most, not the least**, a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2 (emphasis added). The RFC assessment is based on "all of the relevant medical **and other evidence**." 20 C.F.R. § 404.1545(a)(3). In assessing a claimant's RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments, i.e., those that are demonstrable by objective medical evidence. SSR 96-8p, 1996 WL 374184, at *2. Similarly, if the evidence does not show a limitation or restriction of a specific functional capacity, the ALJ should consider the claimant to have no limitation with respect to that functional capacity. Id. at *3. The ALJ is **exclusively** responsible for determining an individual's RFC. 20 C.F.R. § 404.1546(c).

It is well-settled that the ultimate responsibility for determining a claimant's RFC, in light of the evidence presented, is reserved to the ALJ, not to the claimant's physicians or other experts. *See* 20 C.F.R. § 404.1546. "[T]he ALJ will evaluate a [physician's] statement [concerning a claimant's capabilities] in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." *Green v. Soc. Sec. Admin.,* 223 F. App'x 915, 923 (11th Cir. 2007); *see also Pritchett v. Colvin*, Civ. A. No. 12-0768-M, 2013 WL 3894960, at *5 (S.D. Ala. July 29, 2013) (holding that "the ALJ is responsible for determining a claimant's RFC"). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that

the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Jones v. Colvin*, CA 14-00247-C, 2015 WL 5737156, at *23 (S.D. Ala. Sept. 30, 2015) (quoting *Ricks v. Astrue*, No. 3:10-cv-975-TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) (internal quotation marks and citations omitted)).

A review of the entire record reveals that the ALJ was presented with a wide range of medical evidence. In this case, the ALJ discussed the relevant medical evidence, including the weight accorded to the medical opinion evidence and the grounds therefor. (Tr. 14-17). The ALJ also described information provided by Hurry in the Function Reports she completed and at the hearings concerning her limitations and activities. (*Id.*). The ALJ made reference to the medical findings, as well as other evidence, in assigning additional limitations to Hurry's light duty status. (*Id.*) The ALJ did not base his decision on any single opinion, but rather, he considered the full record and a variety of factors in assessing Hurry's RFC. (Tr. 14-17), Having reviewed the evidence and considered the arguments made by Hurry and being mindful of the admonishment that the reviewing court may not reweigh the evidence or substitute its judgment for that of the Commissioner, the Court finds that the RFC assessment made by the ALJ was supported by substantial evidence.

Hurry asserts that the ALJ erred in assigning weight to the medical opinions of Dr. Freij, a neurologist who tested and examined Hurry twice, and Dr. Todorov, a non-examining medical expert. The relevant social security regulations[4] provide that

---

[4] Because Hurry filed her claim for social security benefits prior to March 27, 2017, the applicable rules for evaluating medical opinion evidence are set forth in 20 C.F.R. § 404.1527. *See* 20 C.F.R. §§ 404.614, 404.1527.

"medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [their] symptoms, diagnosis and prognosis what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). "When weighing each medical opinion, the ALJ must consider whether the doctor has examined the claimant; the doctor's relationship with the claimant; the medical evidence supporting the doctor's opinion; how consistent the doctor's opinion is with the record as a whole; and the doctor's specialization." *Muniz v. Comm'r of Soc. Sec.*, 716 F. App'x 917, 919 (11th Cir. 2017) (citing 20 C.F.R. § 416.927(c); *see also Nichols v. Comm'r, Soc. Sec. Admin.*, No. 16-11334, 2017 WL 526038, at * 5 (11th Cir. Feb. 8, 2017) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)) (stating that "[i]n determining how much weight to give a medical opinion, the ALJ considers such factors as the examining or treating relationship, whether the opinion is well-supported, whether the opinion is consistent with the record, and the doctor's specialization").

    A review of the entire record in this case reveals that the ALJ was presented with multiple opinions, testimony, and medical records that indicated Hurry's functional limitations. The ALJ discussed the medical evidence in his decision, including the weight accorded to the medical opinion evidence and the grounds therefor. (Tr. 13-18). Hurry complains that it was improper for the ALJ to accord more weight to the opinion of Dr. Todorov that the medical evidence did not support any limitation in the use of the left hand and supported continuous, but not repetitive, use of the right hand (*see* Tr. 635), than to the opinion of Dr. Friej that Hurry should be limited to only occasional use of

both hands (*see* Tr. 594). (Tr. 16). In his opinion, the ALJ supported his conclusion in this regard, stating that:

> Dr. Freij offered the more supportive assessments but the opinions have very limited value given a lack of identified objective support (Exhibit 14F, 16F). Even though his objective test results demonstrated quite mild problems, he assigned substantial restrictions without identifying corresponding support (e.g., he opines she can only occasionally reach, handle and finger with the left hand after stating testing demonstrated no carpal tunnel syndrome or cervical radiculopathy involving the left upper extremity). Dr. Todorov's opinion is far more in line with the objective findings, as he specifically and accurately explained in his assessment (Exhibit 19F). Particularly given the above-noted imagining [sic] and electrodiagnostic results, the actual treatment regimen, and the observations of the treating orthopedist, the undersigned has assigned more substantial weight to Dr. Todorov's assessment.

(Tr. 16). The ALJ clearly provided support for his determination to accord that portion of Dr. Todorov's opinion more weight than that provided Dr. Freij's opinion. The Court also notes that its review of Dr. Freij's records showed a discrepancy between his records and the limitations assigned to the use of both hands in the MSS. Nowhere in Dr. Freij's records did he note carpal tunnel syndrome or peripheral neuropathy in Hurry's left wrist or hand and, in fact, in the MSS, he stated that the limitations he assessed in the chart delineating restrictions in both hands was based on right carpal tunnel syndrome (CTS). *See* Tr. 594).

Based on its review of the ALJ's decision and the record, the Court finds that the ALJ properly applied the appropriate standard in evaluating the weight to be accorded these medical opinions. It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. This Court is

11

limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards.

B. **Whether the ALJ asked the VE a complete and sufficient hypothetical question**

Hurry contends that the hypothetical posed to the VE by the ALJ was not sufficient because 1) the question did not include Dr. Freij's or Dr. Todorov's opinion regarding the distance she could ambulate without a cane and 2) the question posed did not consider her significant impairment of peripheral neuropathy with regard to its effect on both hands. Hurry's argument fails factually as to both of these grounds. At the third hearing, the ALJ asked the VE to consider the MSSs provided by both doctors; therefore, the questions asked to the VE included both doctors' opinions regarding ambulation with a cane. (Tr. 42-45). The Court notes that the ALJ actually imposed a greater restriction than that suggested by either of the physicians in his RFC by not including a distance that Hurry could ambulate without a cane. (Tr. 14). The ALJ also asked the VE to consider both doctor's opinions regarding restrictions to the use of the hands. (Tr. 43-46). Accordingly, this assertion of error does not support a remand or reversal.

C. **Whether the ALJ failed to evaluate Hurry's subjective symptoms properly**

Hurry alleges that the ALJ failed to evaluate her subjective complaints properly by not including a statement concerning her complaints of pain and its functional effects and because of his statement of Hurry's credibility did not comply with the requirements of SSR 96-7p. (Doc. 20 at p. 9-10). In evaluating a claimant's subjective complaints of pain or other symptoms, an ALJ undertakes a two-step process. *See* 20 C.F.R. § 404.1529. First, the ALJ determines whether the claimant has a medically determinable

impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b). Second, the ALJ evaluates the "intensity and persistence" of the symptoms and determines the extent to which the symptoms limit the ability to perform work-related activities. 20 C.F.R. § 404.1529(c). In evaluating the intensity and persistence of a claimant's symptoms, the ALJ is to consider all available evidence from the claimant's medical sources and nonmedical sources about how the symptoms affect the claimant. *Id.* The factors relevant to the claimant's symptoms that the ALJ should consider include daily activities; the location, duration, frequency, and intensity of the claimant's pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; other treatment the claimant has received for relief of pain; any other measures used to relieve pain; and any other factors concerning the claimant's functional limitations due to pain. *Id.* A claimant's symptoms, such as pain, will be determined to diminish the capacity for basic work activities to the extent that the alleged functional limitations due to pain can reasonably be accepted as consistent with the objective medical evidence and other evidence. *Id.*

Here, Hurry alleges that the ALJ failed to adequately discredit her subjective testimony. However, the record shows that the ALJ specifically discussed the two-part process described above (Tr. 14); discussed Hurry's daily activities (Tr. 15); discussed her statements regarding the location, causation, frequency, and intensity of her pain (Tr. 15); discussed her treatment with medication for pain, spasm, stiffness, and/or inflammation and the fact that her doctor did not express concern about chronic substantial side effects from the medication (Tr. 16); discussed her chiropractic treatment (Tr. 15); and discussed the medical evidence, including, for example,

notations that she demonstrated a normal gait and balance despite using a cane, that she either had normal objective tests results or only mild objective findings, and that she had conservative and limited treatment (Tr. 15-16). After considering all of the evidence, the ALJ concluded that Hurry's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with substantial medical evidence. (Tr. 15). The Court finds that the ALJ properly considered a variety of factors as required by the relevant regulations in evaluating Hurry's subjective complaints and properly supported his credibility determination. Credibility determinations are the province of the ALJ, and this Court cannot "disturb a clearly articulated credibility finding supported by substantial evidence." *See Raices v. Comm'r of Soc. Sec.,* No. 19-12718, 2020 WL 1062132, at *2 (11th Cir. Mar. 5, 2020) (quoting *Mitchell v. Comm'r, Soc. Sec. Admin.,* 771 F.3d 780, 782 (11th Cir. 2014)). The Court holds that the ALJ's finding was supported by substantial evidence.

## **CONCLUSION**

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **27th** day of **March, 2020**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**